**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| STEPHEN BOND and ANN BOND, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 13-1340-SLR-CJB |
| ) | |
| AMERICAN BILTRITE CO., et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

This matter arises out of an asbestos personal injury action originally filed by Plaintiffs

Stephen Bond and Ann Bond ("Plaintiffs") against numerous Defendants, including Defendant

Lockheed Martin Corporation ("Lockheed Martin"), in the Superior Court of Delaware, in and

for New Castle County ("Superior Court"). (D.I. 1, ex. 1 (hereinafter, "Complaint")) Lockheed

Martin removed the state court action to this Court pursuant to 28 U.S.C. §§ 1442(a) and 1446.

(D.I. 1) Presently pending before the Court is Plaintiffs' motion to remand this action to

Delaware state court, on the grounds that Defendants' removal was untimely in light of the

requirements of Section 1446(b) (the "motion to remand" or "Motion"). (D.I. 34) For the

reasons that follow, I recommend that the motion to remand be DENIED.

## I.     BACKGROUND

Plaintiffs filed this lawsuit in the Superior Court on November 7, 2012. (*See* Complaint)

In the Complaint, Plaintiffs asserted 11 state law causes of action against 30 Defendants,

including Lockheed Martin. (*Id.*) These causes of action are based on Mr. Bond's alleged

exposure to asbestos-containing products and equipment, while Mr. Bond was working in

various settings between 1956 and 1986. (*Id.* at ¶¶ 32(b), 33)

.

The Complaint further set out the following allegations regarding Mr. Bond's work history:

> Plaintiff STEPHEN P. BOND experienced occupational and bystander exposure to asbestos while he served in the U.S. Navy from 1968 to 1972, while he worked as a construction worker in various states from 1956 to 2002, while he worked at Varrity Landscaping as a labor[er] in Pennsylvania from 1966 to 1968, Budd Co./Railcar Division as a sheet metal installer in Pennsylvania from 1980 to 1985, and Branch Valley Associates as a construction laborer in Pennsylvania from 1985 to 1990. Plaintiff STEPHEN P. BOND was exposed to asbestos-containing products and equipment including, but not limited to, asbestos-containing pumps, valves, packing, gaskets, insulation, boilers, turbines, cooling towers, pipe, paint, HVAC equipment, and raw asbestos.

(Complaint at ¶ 32(b))  The Complaint does not contain allegations unique to Lockheed Martin or any other Defendant. (*Id.*)  As a result, it does not further identify any particular Lockheed Martin product associated with Mr. Bond's asbestos exposure, nor any particular aircraft (manufactured by Lockheed Martin or any other entity) via which Mr. Bond was alleged to have been exposed to asbestos-containing products. (*Id.*)

Lockheed Martin is, among other things, an aircraft manufacturer. (D.I. 53 at 2-3)  It was served with Plaintiffs' Summons and Complaint on December 26, 2012. (D.I. 1 at ¶ 2)

On February 23, 2013, Plaintiffs served their responses to all Defendants' Standard Set of Interrogatories. (D.I. 36, ex. B (hereinafter, "Responses to Interrogatories" or "Responses"))  The Responses provide some additional detail regarding Mr. Bond's service in the United States Navy and his allegations that relate to that period—the time period at issue here.  Specifically, the responses indicated that Mr. Bond was alleging asbestos exposure relating to his work with the U.S. Navy: (1) from 1968-1972 on the USS Independence CV-62, based out of Norfolk,

2

Virginia, regarding his work on that aircraft carrier; and (2) from 1971-72 during his work as an

"E-5, Equipment Tech, Parachute rigger" in Norfolk.  (Responses at 3, 5 & ex. A; D.I. 35 at 2)

On February 26, 2013, Lockheed Martin filed its Answer, and asserted affirmative

defenses.  (D.I. 36, ex. D)  Among those were the federal government contractor defense and the

derivative sovereign immunity doctrine.  (*Id.* at 15)[1]

On June 26, 2013, Mr. Bond sat for his deposition.  (D.I. 53 at 3)  During it, Mr. Bond

testified for the first time that while serving in the U.S. Navy, and specifically while stationed at

U.S. Naval bases in Atsugi, Yamoto, Japan and in Da Nang, Vietnam from 1969-71, he was

exposed to asbestos-containing products or components that came from certain aircraft that he

identified as "the old Connies, Constellations" and "P-3s[.]"  (D.I. 1, ex. 3 at 174-205)  Although

Mr. Bond could not identify at the deposition the manufacturer of these aircraft or their contents,

(*see id.* at 178-79), it is undisputed here that these were references to the WV-2Q Super

Constellation and P-3 Orion military aircraft, which were manufactured by Lockheed Martin,

(D.I. 53 at 3).

On July 26, 2013, within 30 days after Mr. Bond's deposition, Lockheed Martin filed its

Notice of Removal in this Court.  (D.I. 1)  Lockheed Martin asserted therein that it manufactured

the WV-2Q Super Constellation and P-3 Orion military aircraft referenced in Mr. Bond's

deposition pursuant to a validly-conferred government authority, and in conformance with

---

[1]     Specifically, Lockheed Martin's Answer alleged that "Lockheed Martin is
protected from liability for any conduct performed in conformance with government specification
or private contractual specifications pursuant to the doctrine and rules embodied in *Boyle v.
United Technologies Corporation*, 487 U.S. 500 (1988) and its progeny, the derivative sovereign
immunity doctrine set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940),
and/or any other relevant protection or immunity established by statute, regulation, or otherwise."
(D.I. 36, ex. D at 15)

reasonably-precise, government-approved specifications. (*Id.* at ¶¶ 3, 10-12)  It thus alleged that removal was appropriate due to the two federal defenses it had previously referenced in its state court Answer—the government contractor defense and the defense of derivative sovereign immunity. (*Id.* at ¶¶ 11-12)

On August 5, 2013, this matter was referred to the Court by Judge Sue L. Robinson to "conduct all proceedings . . . [and] hear and determine all motions[], through and including the pretrial conference." (D.I. 23)  Plaintiffs' Motion was filed on August 23, 2013 and briefing was completed on October 15, 2013. (D.I. 34, 53)

## II.    STANDARD OF REVIEW

The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office[.]"  28 U.S.C. § 1442(a)(1).  In order to remove pursuant to Section 1442(a)(1), a defendant must establish the following:  (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office. *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998); *Kirks v. Gen. Elec. Co.*, 654 F. Supp. 2d 220, 223 (D. Del. 2009). Unlike the case with the general removal statute, 28 U.S.C. § 1441, which courts must construe strictly in favor of remand, the federal officer removal statute is to be construed broadly, in order to effectuate Congress' intent that federal officers have access to a federal forum in which they

can litigate the validity of their defense of official immunity. *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 770 F. Supp. 2d 736, 741 (E.D. Pa. 2011). Nevertheless, it remains well-settled that the party removing an action to federal court bears the burden of proving that removal is appropriate. *Kirks*, 654 F. Supp. 2d at 222 (citing *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)).

While Section 1442 governs the substantive requirements for federal officer removal, the timeliness of removal is dictated by Section 1446. Section 1446(b) provides that a defendant must file a notice of removal within thirty days after the receipt of the initial pleading. 28 U.S.C. § 1446(b). If the basis for removal is not set forth in the initial pleading, however, a defendant must remove within thirty days after receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]" 28 U.S.C. § 1446(b)(3).

In analyzing the timeliness of federal officer removal, courts must consider whether the document at issue "informs the reader, to a substantial degree of specificity, [that] all the elements of federal jurisdiction are present." *Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 53-54 (3d Cir. 1993) (internal quotation marks and citation omitted), *overruled on other grounds*, *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999); *In re Asbestos Prods. Liab. Litig.*, 770 F. Supp. 2d at 739-40.[2] If so, receipt of the document triggers the thirty-day clock for removal to run under Section 1446. *Foster*, 986 F.2d at 53-54. The analysis for determining whether the document at issue sufficiently put the defendant on notice of

---

[2]    The timeliness of removal is an issue of federal law. *In re Asbestos Prods. Liab. Litig.*, 770 F. Supp. 2d at 739.

removability is an objective one: "the issue is not what the defendant knew, but what the relevant document said." *Id.* (internal quotation marks and citation omitted).[3] The defendant bears the burden of showing the timeliness of removal pursuant to Section 1446. *Scearce v. 3M Co.*, Civil No. 12-6676 (RBK/JS), 2013 WL 2156060, at *3 (D.N.J. May 16, 2013) (citing cases).

## III.   DISCUSSION

Plaintiffs do not contest that Lockheed Martin could establish the legal requirements necessary to remove this action pursuant to the federal officer removal statute. Rather, they argue that Lockheed Martin's notice of removal was untimely filed because Lockheed Martin failed to remove within thirty days of receiving Plaintiffs' Summons and Complaint, or, alternatively, Plaintiffs' Responses. (D.I. 35)

In response, Lockheed Martin asserts that it was not until review of Mr. Bond's deposition testimony (the "other paper" referenced in Section 1446(b)(3) at issue here) that it was first able to ascertain that this case was removable. (D.I. 53 at 1-4)  More specifically, Lockheed Martin notes that in order to be able to satisfy, *inter alia*, the element of federal officer removal jurisdiction that requires plaintiff's claims to be based upon the defendant's conduct "acting under" a federal office, Lockheed Martin had to be able to confirm that Mr. Bond was actually

---

[3]      In *Foster*, the United States Court of Appeals for the Third Circuit held that the first thirty-day window for removal is triggered only when the four corners of the initial pleading informs a defendant that all elements of federal jurisdiction are present. *Foster*, 986 F.2d at 53. Although the Third Circuit has not yet reached the issue of what test applies to assess when the second thirty-day window under Section 1446(b)(3) triggers removal, the Court assumes that the objective *Foster* standard applies in evaluating timeliness under Section 1446(b)(3). *See, e.g.*, *Bouchard v. CBS Corp.*, No. MDL-875, 2012 WL 1344388, at *5 (E.D. Pa. Apr. 17, 2012) (quoting *Foster*, 986 F.2d at 53); *see also Scearce v. 3M Co.*, Civil No. 12-6676 (RBK/JS), 2013 WL 2156060, at *3 n.3 (D.N.J. May 16, 2013).

alleging asbestos exposure caused by products that Lockheed Martin manufactured pursuant to

the direct and detailed control of a federal officer or agency. (*Id.* at 7 (citing *Hagen v. Benjamin*

*Foster Co.*, 739 F. Supp. 2d 770, 784 (E.D. Pa. 2010)). But because the Complaint did not

identify any product associated with Lockheed Martin particularly (nor did it identify, more

generally, any aircraft on which Mr. Bond alleged that he was exposed to asbestos), Lockheed

Martin could not tell whether it had a viable federal defense. (*Id.* at 5-8 & n.3) Even had it

assumed based on the Complaint and Responses that it had been sued due to asbestos exposure

Mr. Bond suffered during his Naval employment, Lockheed Martin asserts that it still would have

lacked the necessary factual information to justify removal. (*Id.* at n.3) That is because it

performed a variety of functions on military bases like those on which Mr. Bond worked—only

some of which entitled it to immunity and the government contractor defense. (*Id.* at 6-9 & n.3

(citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)) Only after Mr.

Bond identified at the deposition the particular aircraft (the P-3 and WV-2Q aircraft) with which

he associated asbestos exposure during his Naval service while working at certain Naval bases

overseas—aircraft that Lockheed Martin asserts were manufactured in conformity with a federal

officer's directions—could Lockheed Martin establish the required elements of the defense.

(*Id.*)[4]

---

[4]      Thus, Lockheed Martin has put forward a clear and consistent explanation as to
why the content of Mr. Bond's deposition made its federal defense then firmly ascertainable for
the first time. Despite Plaintiffs' argument to the contrary, (D.I. 35 at 5-6), this renders this case
unlike that in *Pantalone v. Aurora Pump Co.*, 576 F. Supp. 2d 325 (D. Conn. 2008). In
*Pantalone*, the United States District Court for the District of Connecticut granted the plaintiff's
motion to remand, finding defendant Buffalo Pumps' removal to be untimely, because Buffalo
Pumps' "grounds for removal [were] not traceable to the information confirmed and described"
in an expert's report, such that Buffalo Pumps' "claim that the [] report was the event which
triggered removability" was not supported by its "own submissions." *Id.* at 334. Here, Plaintiffs

The Court agrees with Lockheed Martin's position. In a case such as this one, a defendant has no firm basis for removal "'[u]ntil the military products [relating to the defendant that are alleged to be associated with asbestos exposure are] specifically identified.'" *Von Dell v. Boeing Co.*, Civ. No. 11-786-SLR, 2011 WL 5970873, at *1 (D. Del. Nov. 29, 2011) (quoting *In re Asbestos Prods. Liab. Litig.*, Civ. No. 11-63520, 2011 WL 2039218, at *2 (E.D. Pa. May 25, 2011)). Under the circumstances at issue here, it was not until Mr. Bond's deposition that such products (i.e., those associated with Lockheed Martin airplanes that are allegedly manufactured pursuant to federal specifications) were first sufficiently identified by Plaintiffs. Indeed, this conclusion is in line with those of other courts to have examined similar issues with respect to this particular defendant or its affiliated companies. *See Durham*, 445 F.3d at 1251 (finding that "[u]ntil [plaintiff] revealed which aircraft he had worked on during his Air Force career, Lockheed [Martin] couldn't assert either that its actions were taken pursuant to a federal officer's

---

assert that Lockheed Martin's Notice of Removal "states that *any* [Lockheed Martin] aircraft products Mr. Bond would encounter in the Armed Services were designed and supplied pursuant to the government's precise specifications" and that the "fact that his deposition testimony disclosed a particular aircraft model is [similar to the case in *Pantalone*] inconsequential to the basis claimed for removal by Lockheed [Martin]" since "the complaint already alleged that he was exposed to asbestos materials made and supplied by Lockheed [Martin] during his [Navy] service." (D.I. 35 at 7 (emphasis in original)) But the Notice of Removal does *not* say that "any" aircraft products Mr. Bond encountered "in the Armed Services" were designed in a manner making the defense applicable. Instead, the Notice of Removal: (1) cites to Mr. Bond's deposition testimony; (2) notes that only in that testimony did Mr. Bond first identify *the particular Lockheed Martin-manufactured aircraft* associated with his claims of asbestos exposure; and (3) asserts that any decision regarding asbestos components *in those particular identified Lockheed Martin-manufactured aircraft* were made under the full control and discretion of the United States government. (D.I. 1 at ¶¶ 3, 10-12) Indeed, neither the Complaint nor the Responses had even previously referenced products specifically related to "aircraft" as those that were alleged to have given rise to asbestos exposure—such that the deposition testimony appears to have been the first occasion that Lockheed Martin could even have determined more generally that aircraft-related products were at issue in the case.

directions, or that it had a colorable federal defense" since "Lockheed, like other federal military

contractors, performs some activities on military bases that are protected by federal contractor

immunity, and others that are not"); *see also Bouchard v. CBS Corp.*, No. MDL-875, 2012 WL

1344388, at *7 (E.D. Pa. Apr. 17, 2012) (finding that because "[d]efendant Lockheed

[Shipbuilding Corporation] like other federal military contractors, performs activities [on some

ships] that are protected by federal contractor immunity, and others that are not[,]" allegations

that a plaintiff had faced asbestos exposure while working on ships at Lockheed Shipbuilding

Corporation's work site were insufficient to give rise to removability, in the absence of

identification of the particular ships in question).

Plaintiffs nevertheless claim that because Lockheed Martin asserted in its earlier state

court Answer the potential applicability of certain federal defenses, including the government

contractor defense, then it must have then possessed sufficient facts to enable it to invoke federal

officer removal jurisdiction. (D.I. 35 at 5)  However, just this argument was rejected by the

United States District Court for the Eastern District of Pennsylvania in *Bouchard v. CBS Corp.*,

No. MDL-875, 2012 WL 1344388, at *7 (E.D. Pa. Apr. 17, 2012).  The *Bouchard* Court

explained that because an "'affirmative defense need not be plausible to survive[, and] must

merely provide fair notice of the issue involved[,]'"[5] a defendant (such as Lockheed Martin here)

could assert it based only on the "possibility that a federal contract would be at issue" as to it. *Id.*

(quoting *Tyco Fire Prods. LP. v. Victaulic Co.*, 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011)).  In

---

[5]      *See also Senju Pharm. Co., Ltd. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 303 (D. Del.
2013) ("*Twombly* and *Iqbal* do not apply to affirmative defenses,' which 'need not be plausible
to survive. [An affirmative defense] must merely provide fair notice of the issue involved.'")
(quoting *Tyco Fire Prods. LP. v. Victaulic Co.*, 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011)).

contrast, a defendant seeking to remove under Section 1442(a) must be able to muster more

evidence than that—it must instead have identified concrete "factual information" that, viewed in

the light most favorable to it, entitles it to a complete defense. *Id.* at \*7-8. Thus, here, as in

*Bouchard*, Lockheed Martin's earlier filing of an Answer asserting its federal affirmative defense

does not undercut its position as to when sufficient notice of removability was received.

## IV.    CONCLUSION

For the reasons set forth above, I therefore recommend that this Court DENY Plaintiffs'

motion to remand.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss

of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874, 878-

79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website,

located at http://www.ded.uscourts.gov.


Dated:  February 20, 2014                          _Christopher J. Burke_____
                                                   Christopher J. Burke
                                                   UNITED STATES MAGISTRATE JUDGE